## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-CV-1054

CAROL BURNSIDE and STEPHEN BURNSIDE,

Plaintiff,

v.

ALLERGAN PLC, ALLERGAN, INC. f/k/a INAMED CORPORATION and prior to that MCGHAN MEDICAL CORPORATION, and ALLERGAN USA, INC.,

Defendant.

_____

## COMPLAINT AND JURY DEMAND
_____

Plaintiffs CAROL BURNSIDE and STEPHEN BURNSIDE, based on information and belief, and for causes of action against the Defendants ALLERGAN PLC, ALLERGAN, INC., ALLERGAN USA, INC., and INAMED CORPORATION, each of them, hereby allege as follows:

## INTRODUCTION

1.      Plaintiffs CAROL BURNSIDE and STEPHEN BURNSIDE bring this action against Defendants ALLERGAN PLC, ALLERGAN, INC., ALLERGAN USA, INC., AND INAMED CORP., (hereinafter, collectively referred to as "Defendants" or "Allergan"), in relation to the design, manufacture, marketing, labeling and distribution of McGhan Breast Implants, the pervasive, reckless and continuous failure to comport with the Premarket Approval Application ("PMA") requirements imposed by the Food & Drug Administration ("FDA"), and failure to warn consumers of the known dangers and known adverse events.

1

2. Defendant Allergan, formerly known as Inamed Corporation ("Inamed") and prior to that known as McGhan Medical Corporation ("McGhan"), is a global leader in aesthetic medicine, and a market leader in breast aesthetics.

3. Plaintiffs bring this action against Defendants in relation to the design, manufacture, marketing, and distribution of McGhan Breast Implants, the repeated failure to follow the requirements imposed by FDA, failure to warn consumers and healthcare providers of known dangers and known adverse events, and reckless violation of state law.

## **PARTIES**

4. At all times relevant hereto, Plaintiffs Carol Burnside and Stephen Burnside are and have been residents of Peyton, Colorado.

5. Allergan plc is a publicly-traded corporation whose headquarters is in Dublin, Ireland. Allergan's administrative headquarters in the United States are located in the states of New Jersey and California

6. Allergan, Inc. is a wholly-owned subsidiary of Allergan plc and is incorporated under the laws of Delaware possessing its principal place of business in New Jersey.

7. Allergan USA, Inc. is a wholly-owned subsidiary of Allergan plc and is incorporated under the laws of Delaware possessing its principal place of business in New Jersey.

8. McGhan Medical Corporation ("McGhan") previously served the North American aesthetic medicine and reconstructive surgery markets. McGhan developed, manufactured and sold plastic and reconstructive surgery (PRS) products (primarily

2

saline-filled breast implants and tissue expanders). It sold primarily to plastic surgeons, dermatologists, cosmetic surgeons and other medical practitioners in the United States and Canada.

9.      Upon information and belief, McGhan changed its name to Inamed Corporation ("Inamed") in 1986.

10.     Inamed Corporation is incorporated under the laws of Delaware and its principal place of business is in Orange County, California.

11.     Inamed was a global surgical and medical device company engaged in the development, manufacturing and marketing of products for the plastic and reconstructive surgery, aesthetic medicine and obesity markets.   Inamed sold a variety of lifestyle products, including breast implants for cosmetic augmentation and breast implants for reconstructive surgery following a mastectomy.

12.     In March 2006, Allergan purchased substantially all of Inamed including Inamed's outstanding common stocks, as well as Inamed's wholly-owned subsidiary, McGhan.

13.     At all relevant times, each Defendant acted in all aspects as the agent and alter ego of each other.

14.     The combined acts and/or omissions of each Defendant resulted in injuries to the Plaintiff.   Each of the above-named Defendants is a joint tortfeasor and/or co-conspirator and is jointly and severally liable to Plaintiff for the negligent acts and omissions alleged herein. Each of the above-named Defendants directed, authorized, and/or ratified the conduct of each and every other Defendant.

15.     At all relevant times, Defendants acted in concert with one another in the State of Colorado to fraudulently convey false and misleading information concerning the McGhan Breast Implants and concealed the risks of serious adverse events associated with the implant from Plaintiff, the public, physicians, and other healthcare providers.

16.     But for the Defendants' actions, Plaintiff Carol Burnside would not have suffered the severe injuries and harms that resulted from implantation of the McGhan Breast Implants into Plaintiff Carol Burnside's body.

17.     Defendant Allergan is a leading breast implant manufacturer, having collected approximately $400 million in net revenue in 2017 alone from the sale of breast implants.

18.     The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. There is complete diversity of citizenship between the parties.  In addition, Plaintiff seeks damages in excess of $75,000, exclusive of interest and costs.

19.     This Court has personal jurisdiction over Defendants.

20.     Defendants are authorized and licensed to conduct business in the State of Colorado and maintain and carry on systematic and continuous contacts in this judicial district, including the acts which caused or contributed to Plaintiffs' injuries.

21.     At all material times, Defendants employed numerous individuals in this district and regularly availed themselves of the privileges and benefits of this judicial district.   Defendants received substantial financial gain as a result of designing, formulating, testing, packaging, labeling, producing, assembling, advertising, marketing, promoting, distributing, manufacturing, and/or selling the breast implant products within this jurisdiction.

4

22.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to this claim occurred within this judicial district.

## FACTS REGARDING BREAST IMPLANTS

### General Information Relating to Breast Implants

23.     Silicones, which are also called polysiloxanes, are polymers that include a synthetic compound made up of repeating chains of alternating silicon and oxygen atoms, frequently combined with carbon and/or hydrogen.  Silicones are typically  heat-resistant and rubber-like, and are used in sealants, adhesives, lubricants, medicine, cooking utensils, and thermal and electrical insulation. Being purely synthetic, silicones do not exist in nature.

24.     A breast implant is a prosthetic product used to change the size, shape, and contour of a woman's breast. There are three general types of breast implant products, defined by their filler material: saline solution, silicone gel, and composite filler.

25.     Silicone gel-filled breast implants have a silicone outer shell that is filled with silicone gel. They are available in various sizes and can have either a smooth or textured shell. Silicone gel-filled breast implants are approved for breast augmentation in women age 22 or older and for breast reconstruction in women of any age.

26.     In 1976, Congress passed the Medical Device Amendments ("MDA") to the Federal Food, Drug and Cosmetic Act ("FDCA"). Upon enactment of the MDA, the FDA deemed saline-filled breast implants as Class II devices, to be reviewed through a premarket notification process. The devices could be publicly sold so long as

5

manufacturers later provided "reasonable assurance" of the products' safety and effectiveness. 21 U.S.C. §360e(d)(2).

27.     In 1988, in response to growing safety concerns, the FDA re-classified both saline-filled and silicone gel-filled breast implants as Class III devices requiring premarket approval ("PMA").

28.     In April 1991, upon final publication of new regulations, FDA began requiring breast implant manufacturers to obtain specific premarket approval by the FDA for any silicone gel-filled breast implants.

29.     Through its PMA process, the FDA engages in scientific evaluations of the safety and effectiveness of Class III medical devices. The FDA considers Class III devices to create the greatest risk to human safety, necessitating the implementation of special controls, including the requirement to obtain PMA under 21 U.S.C. § 360 prior to marketing the product to the public.

30.     A PMA application must contain certain information which is critical to the FDA's evaluation of the safety and efficacy of the medical device at issue. A PMA and/or PMA Supplement application must provide:

      a.     Proposed indications for use;

      b.     Device description including the manufacturing process;

      c.     Any marketing history;

      d.     Summary of studies (including non-clinical laboratory studies, clinical investigations involving human subjects, and conclusions from the study that address benefit and risk;

      e.     Each of the functional components or ingredients of the device;

6

f.      Methods used in manufacturing the device, including compliance with current good manufacturing practices; and

g.      Any other data or information relevant to an evaluation of the safety and effectiveness of the device known or that should be reasonably be known to the manufacturer from any source, including information derived from investigations other than those proposed in the application from commercial marketing experience.

31.     Where Conditional Premarket Approval ("CPMA") is granted, a device marketed by a manufacturer which fails to perform any requirements of the CPMA is considered to be adulterated under §501 of the FDCA and may not be further marketed.

32.     In November 1991, the FDA held an Advisory Panel meeting to discuss several PMAs for silicone gel-filled breast implants. While the Advisory Panel concluded that the manufacturers had failed to provide adequate safety and effectiveness data for their implants, they unanimously recommended that the FDA permit the implants to remain on the market.

33.     In January 1992, the FDA announced a voluntary moratorium on silicone gel- filled breast implants, requesting that the manufacturers stop supplying them and that surgeons stop implanting them while the FDA engaged in a further review of the products' safety and effectiveness.

34.     In April 1992, the FDA determined that none of the PMAs submitted for silicone gel-filled breast implants contained sufficient data to support premarket approval for silicone breast implants. From that time, implantation of the products in the United States was limited to reconstruction and revision patients.

7

35.     In September 2000, the FDA approved a feasibility study for Inamed's Style 410 silicone-gel filled breast implant.

36.     In December 2004, Inamed completed submission of its PMA application to the FDA for Style 410 silicone-gel filled breast implants.

37.     On April 11, 2005, the General and Plastic Surgery Advisory Panel of the FDA recommended the non-approval of Inamed's PMA application to market their silicone-gel filled breast implants in the U.S.

38.     Inamed subsequently submitted a modified PMA application towards the end of 2005 and received an "approval letter" stipulating a number of conditions Inamed was required to comply with in order to receive FDA approval.

39.     **Inamed's McGhan Style 410FF silicone-filled breast implants were implanted into Mrs. Burnside's body in March 2006, prior to receiving pre-market approval.**

40.     Some of Allergan's silicone-gel filled breast implants received pre-market approval by the FDA in November of 2006, marking the first time in fourteen years that the products were available for elective augmentation in addition to reconstruction and revision.

41.     Allergan's silicone-gel filled breast implants have a silicone outer shell that is filled with silicone gel. They come in different sizes and have either smooth or textured shells and are approved for revision surgery, breast augmentation in women age 22 or older, and for breast reconstruction in women of any age.

42.     As conditions of the 2006 approval, the FDA required Allergan to conduct six post-approval studies to characterize the long-term performance and safety of the

devices. The post-approval studies for Allergan's silicone-gel filled breast implants included:

a.    *Core Post-Approval Studies (Core Studies)* – To assess long-term clinical performance of breast implants in women that enrolled in studies to support premarket approval applications. These studies were designed to follow women for 10 years after initial implantation.

b.    *Large Post-Approval Studies (Large Studies)* – To assess long-term outcomes and identify rare adverse events by enrolling more than 40,000 silicone gel-filled breast implant patients, following them for 10 years.

c.    *Device Failure Studies (Failure Studies)* – To further characterize the modes and causes of failure of explanted devices over a 10-year period.

d.    *Focus Group Studies* – To improve the format and content of the patient labeling.

e.    *Annual Physician Informed Decision Survey (Informed Decision Study)* – To monitor the process of how patient labeling is distributed to women considering silicone gel-filled breast implants.

f.    *Adjunct Studies* – To provide performance and safety information about silicone gel-filled breast implants for the period when implants could only be used for reconstruction and replacement of existing implants.

43.    The primary responsibility for timely and accurately communicating complete, accurate and current safety and efficacy information related to medical device, such as Allergan's silicone-gel filled breast implants, rests with the manufacturer.

9

44.     This primary reporting obligation instills in the manufacturer a duty to vigilantly monitor all reasonably available information, to closely track clinical experiences, and to fully and promptly report all relevant information, specifically but not limited to adverse events, to the FDA, the healthcare community, and consumers.

45.     Also under state law, which does not impose duties or requirements materially different from those imposed by federal law, the manufacturer must precisely monitor its own manufacturing and quality control processes, and its market representations and warranties.

46.     When monitoring and reporting adverse events, especially those indicating an association between their product and breast cancer, ALCL and/or BIA-ALCL, as required by federal regulations and Colorado law, time is of the essence.

47.     Delayed reporting prevents the healthcare community and the public from timely learning of risks which must inevitably play a part in their decision-making, by both physicians and consumers, regarding treatments and procedures, and thereby expose countless additional women to potential harm.

48.     Defendants' specific obligations after the PMA include, but are not limited to:

a.      Reporting to the FDA information suggesting that one of the manufacturer's devices may have caused or contributed to a death or serious injury, or has malfunctioned [21 CFR §§803.50];

b.      Monitoring the product and reporting to the FDA any complaints about its performance and any adverse health consequences that are or may be attributable to the product [21 CFR §814];

10

c. Submitting an adverse event report within 10 days of receiving knowledge of an adverse reaction, side effect, injury . . . that is attributable to the device [21 CFR §814.82(a)(9) and PMA];

d. Submitting a PMA supplement for the following:

o When unanticipated adverse effects, increases in the incidence of anticipated adverse effects, or device failures necessitate a labeling, manufacturing, or device modification [PMA Conditions of Approval and 21 CFR §814.39]

o Labeling changes except for those that add to or strengthen a contraindication, warning, precaution or information about an adverse reaction for which there is reasonable evidence of a causal association [21 CFR §814.39(a)(2) and §814.39(d)(2)(i)];

o for any listed or material changes to the product [21 CFR §814.39];

e. Establishing and implementing a quality policy which all aspects of the manufacturer's operations must meet [21 CFR §820.20];

f. Establishing and maintaining procedures for validating the device design, including testing of production units under actual or stimulated use conditions, and creation of a risk plan and conduction of risk analyses [21 CFR §820.30];

f. Documenting all Corrective Action and Preventative Actions taken by the manufacturer to address non-conformance and other internal quality control issues [21 CFR §820.100];

11

g.      Establishing internal procedures for reviewing complaints and event reports [21 CFR §§820.198, 820.100, 820.20];

h.      Establishing Quality Management System (QMS) procedures to assess potential causes of quality problems, including non-conforming products [21 CFR §§820.70 and 820.90];

i.      Reporting on Post-Approval Studies in a timely fashion [21 CFR §814.80]; and

j.      Advertising the device accurately and truthfully [21 CPR §801].

49.     Defendants violated other federal requirements including the requirements to:

a.      establish and maintain a quality system. [21 C.F.R. 820.5];

b.      provide for management responsibility [21 C.F.R. 820.20];

c.      provide for quality audits [21 C.F.R. 820.22];

d.      establish and maintain procedures to control the design of the device in ordered to ensure that specified design requirements are met [21 C.F.R. 820.30];

e.      establish and maintain procedures to prevent contamination of equipment or product by substances that could reasonable be anticipated to have an adverse effect on product quality [21 C.F.R. § 820.70(e)];

f.      establish and maintain procedures for acceptance activities, including inspections, tests, or other verification activities [21 C.F.R 820.80];

g.      identify the "conformance or nonconformance of product with acceptance criteria ... throughout manufacturing, packaging, labeling, installation,

12

and servicing of the product to ensure that only product which has passed the required acceptance activities is distributed, used, or installed" [21 C.F.R 820.86];

h.      establish and maintain procedures to control product that fails to conform with specified requirements, including the evaluation of non-conforming products [21 C.F.R. § 820.90(a)];

i.      establish and maintain procedures for implementing corrective and preventive action including:

i.      identifying the cause of product nonconformities,

ii.      identifying the actions needed to correct and prevent recurrence of nonconforming product and other quality problems,

iii.      ensuring that information related to quality problems or nonconforming product is disseminated to hose directly responsible for assuring. [21 C.F.R. § 820.100(a)(1)-(7)].

50.      Defendants violated federal and state requirements by failing to report adverse events from the post market approval studies commissioned as part of the implant's PMA approval, which would have led to reports suggesting the device's contribution to serious injury, such as those suffered by Plaintiff Carol Burnside.

51.      Had Defendants not intentionally failed to comply with their clearly-established post-market surveillance obligations, Carol Burnside would have decided against implantation and her injuries would not have occurred.

52.      Under applicable state law, which does not impose duties or requirements materially different from those imposed by federal law, Allergan had a duty to exercise reasonable care in adequately and timely warning Plaintiff and Plaintiff's implanting

13

surgeon about the dangers of the McGhan Breast Implants, and about all adverse events of which Defendants became aware, and had a post-market duty to identify, monitor and report all adverse events and all risks associated with the product.

53.     Despite having knowledge and possession of evidence showing that the use of the McGhan Breast Implants was dangerous and likely to place consumers' health at serious risk, as will be detailed further below, Defendants refused or recklessly failed to identify, disclose and warn of the health hazards and risks associated with the product, and about all adverse events which were known to Defendants.

54.     Instead, Defendants marketed, advertised and promoted the product while at the same time consciously refusing and/or recklessly failing to monitor, warn, or otherwise ensure the safety and efficacy for users of the McGhan Breast Implants.

55.     Under applicable state law, which does not impose duties or requirements materially different from those imposed by federal law, Defendants had a duty to revise its product labeling after becoming aware of otherwise undisclosed dangers in its McGhan Breast Implants.  Defendants refused or recklessly failed to do so.

56.     Despite having knowledge and possession of evidence showing that the use of Allergan's silicone-gel filled breast implants was dangerous and likely to place consumers' health at serious risk, as will be detailed further below, Allergan refused or recklessly failed to identify, disclose and warn of the health hazards and risks associated with the product, and about all adverse events which were known to Allergan.

57.     Instead, Defendant marketed, advertised and promoted the product while at the same time consciously refusing and/or recklessly failing to monitor, warn, or

otherwise ensure the safety and efficacy for users of the Allergan's silicone-gel filled breast implants.

58.     At relevant times, Defendants advertised and marketed their Natrelle Silicone-Filled breast implants as safe for use by women and are "designed TO PROTECT" and that the "gel in *Natrelle*® gummy implants is surrounded by a state-of-the-art breast implant shell that is designed to keep the gel inside."

*See* https://www.natrelle.com/gel-technology (all capitals in original).

59.     Under applicable state law, which does not impose duties or requirements materially different from those imposed by federal law, Defendants were required at all material times to promptly report any information suggesting that one of its products may have contributed to a serious injury, or had malfunctioned and the malfunction would be likely to contribute to a serious injury if it were to recur.

60.     The PMA provided as follows:

Failure to comply with the conditions of approval invalidates this approval order. Commercial distribution of a device that is not in compliance with these conditions is a violation of the act.

61.     Defendants' insufficient follow-up rates and inadequate data from the required studies, as detailed above, establish and confirm Defendants' reckless and intentional disregard for the safety of thousands of women.

62.     Each of the above-cited deficiencies in Defendants' post-market compliance, including those described above, was a "failure to comply with the conditions of approval" and each constituted a ground for withdrawal of the PMA. Defendants' conduct separately violated their duties under the law.

15

63.    Notwithstanding Defendants' failures to comply with post-approval requirements, including the failures described above, Defendants continued to commercially distribute the McGhan Breast Implants. As expressly provided in the PMA, such distribution was a violation of federal law.

64.    Had Defendants substantially complied with the PMA, rather than flagrantly under- performing the post-approval requirements as alleged above, Defendants' disclosures would have led to much wider knowledge of the risks associated with Defendants' products. In addition, Defendants' physician and patient labeling would have materially changed over time, and patients including Plaintiff, and medical providers including Plaintiff's physicians, would not in ignorance have purchased or implanted Defendants' products, including, but not limited to, the causative association to Breast Implant-Associated Anaplastic Large-Cell Lymphoma ("BIA-ALCL").

65.    Specifically, Defendants knew or should have known that the new breast implants, specifically the textured design models, were associated with Anaplastic Large Cell Lymphoma.

66.    To protect the Allergan brand, the Defendants intentionally failed in their post-approval study and conditions of approval, and thereby consciously and deliberately concealed its knowledge of known safety risks from the FDA, the medical community, including Plaintiff's surgeon, and the public at large.  Additionally, the Defendants ignored the available scientific studies and publications indicating an association between textured breast implants and Anaplastic Large Cell Lymphoma.

67.    Defendants also have a duty to exercise reasonable care in the manufacture, development, design, marketing, labeling, distributing, and sale of the

16

product after it was approved for sale by the FDA, which does not impose duties or requirements materially different from those imposed by federal law.  Defendants failed or refused to do so.

68.    At material times, Defendants routinely maintained manufacturing facilities that failed to comply with applicable law and regulations in relation to:

a.    The lack of approved software and systems;

b.    The use of nonconforming products;

c.    Documents which failed to include data or statistical rationale to support sampling plans used to test saline and gel-filled products;

d.    The failure to initiate or take corrective action to reassess the results and adjust the values of product bioburden samples;

e.    The omission of any reference in Defendants' reporting to its manufacturing processes as a potential cause of product failures relating to the inability to sterilize the product;

f.    The omission of any reference in Defendants' reporting to its manufacturing processes as a potential cause of product failures relating to finished products which showed an "absence of material" or a "fail[ure] to contain gel";

g.    The failure to adhere to an appropriate Environmental Monitoring Program;

h.    Deficiencies in Defendants' sampling methods for finished product testing;

i.      Deficiencies in Defendants' risk analyses and its investigation of non-conformances;

j.      Deficiencies in Defendants' environmental monitoring control procedures; and

k.      Citations to incomplete data and missing statistical or technical rationales to justify the performance of finished product testing.

69.     These deviations contributed to faulty manufacture of McGhan Breast Implants which were textured, prone to rupture and which were thus defective and adulterated.

70.     Allergan failed to warn consumers, healthcare providers, including Plaintiff's surgeon, that ALCL or BIA-ALCL, and symptomatology attenuated thereto, was a potential risk of McGhan Breast Implants, and that hundreds, if not thousands, of patients had suffered negative experiences and events as a result of such known risk.

71.     The risk of ALCL or BIA-ALCL was not disclosed or discussed in the product's consumer labeling, despite the availability of substantial evidence that an association existed and was established by at least 2006, but probably much earlier, as further detailed below.

72.     Defendants knew of the manufacturing failures, and multiple risks associated with implants design, and consciously responded by terminating the studies required within post market surveillance, in favor of self-serving research that it could control, and by misrepresenting the risks to the users, physicians, and regulatory agencies.

18

73.     Defendants' conduct not only violated its federal regulatory duties and its duties under state law, but also caused a massive failure of information that has to be present in the medical and scientific community to protect a patient's interest. Because Defendants failed to timely, completely, or accurately report their knowledge of the risks and complications associated with the McGhan Breast Implants, the public's knowledge of the risks associated with the McGhan Breast Implants were seriously hampered and delayed.  This endangered patient safety, including the safety of Plaintiff Carol Burnside.

## BREAST IMPLANT–ASSOCIATED ANAPLASTIC LARGE-CELL LYMPHOMA

74.     Approximately 300,000 total breast implants are placed per year in the U.S. From 2000 to 2016, the number of breast augmentations in the United States rose 37%, and reconstructions after mastectomy rose 39%.

75.     Breast Implant-Associated Anaplastic Large-Cell Lymphoma ("BIA-ALCL") is a rare T-cell lymphoma that can develop following breast implants. It is a type of non-Hodgkin's lymphoma, a cancer of the cells of the immune system.

76.     The most common presenting symptom for BIA-ALCL is a swollen breast caused by the formation of a delayed unilateral idiopathic seroma occurring between the implant surface and the breast capsule.

77.     Upon information and belief, the first case of anaplastic large cell lymphoma (ALCL) in association with silicone breast implants was diagnosed in the early 1990's.

78.     In November 2008, JAMA published a retroactive analysis of 11 cases of ALCL between 1994 and 2006, and based upon preliminary findings, concluded that the evidence indicated an association between silicone breast prosthesis and ALCL.

79.     In 2011, a summary of published studies, evidence and reports was published that identified 27 cases of ALCL, and concluded that there was an association between breast implants and ALCL.

80.     In March 2015, an analysis identified 173 cases of ALCL.  That same month, the French National Cancer Institute announced "There is a clearly established link between the occurrence of this disease and the presence of a breast implant."

81.     On May 19, 2016, the World Health Organization ("WHO") gave the disease an official designation as "BIA-ALCL" and classified it as a distinct clinical entity, *separate from other categories of ALCL*.

82.     In November 2016, Australia's Therapeutic Goods Administration ("TGA") convened an expert advisory panel to discuss the association between breast implants and ALCL and provide ongoing advice.

83.     On March 21, 2017, the FDA released a safety communication updating the current understanding of BIA-ALCL.

84.     In the Updated Safety Alert, the FDA recognized the WHO's designation that BIA-ALCL can occur after receiving breast implants and stated that "[a]t this, time, most data suggest that BIA-ALCL occurs more frequently following implantation of breast implants with textured surfaces rather than those with smooth surfaces."

85.     In May 2017, a global analysis of forty governmental databases identified 363 cases of BIA-ALCL with 258 being reported to the FDA.

86.     A July 2017 article stated that "[e]xperts have called for a common type of breast implant to be banned after it was revealed two people died and 23 developed the same type of cancer in the UK following breast enlargement surgery." Katie Forster, *Calls*

20

*to ban textured breast implants after two die and 23 develop same type of cancer*, The Independent Online, July 10, 2017, available at https://www.independent.co.uk/news/health/breast-implants-cancer-ban-two-die-23-develop-same-type-textured-common-women-enlargement-cosmetic-a7832996.html.  In July 2014, the United Kingdom's Medicines and Healthcare Products Regulatory Agency ("MHRA") issued a Medical Device Alert "to further encourage healthcare professionals to report cases of ALCL in women who have breast implants or who have had them removed."

87.    A September 2017 update from the FDA reported that the agency had received a total of 414 medical device reports ("MDRs") related to breast implants and ALCL, including 9 deaths.

88.    A recent JAMA Oncology article concluded that "[b]reast implants are associated with increased risk of breast-ALCL", but the absolute risk has not been determined. Mintsje de Boer, et al., *Breast Implants and the Risk of Anaplastic Large-Cell Lymphoma in the Breast.* JAMA Oncol. (published January 4, 2018).

89.    On May 9, 2018, Australia's Therapeutic Goods Administration ("TGA") reported 72 cases of ALCL in Australian patients.

90.    The natural occurrence of this cancer is 1/300,000. However, FDA recently cited to studies that place the estimated current risk of BIA-ALCL in women with textured implants to be between 1:3,817 and 1:30,000. This is consistent with risks reported in Europe. A December 2016 update from the TGA reported a risk of 1:1,000 to 1:10,000 for textured implants

91.     Upon information and belief, BIA-ALCL is mainly associated with textured breast implants, however, there have been cases of BIA-ALCL in women with smooth implants.



92.     Despite Defendants' knowledge of an association between breast implants and ALCL dating back to the 1990's, Defendants purposefully failed to comply with their clearly-established post-market surveillance obligations and in doing so have exposed many hundreds of thousands of women to life-altering and avoidable cancer.

93.     In March 2019, the FDA's general and plastic surgery devices panel held a two-day public hearing to reexamine the safety of breast implants.  The FDA is expected to soon announce its conclusions from the hearings.

94.     Shortly after the public hearing, the French regulatory body ANSM (Agence nationale de sécurité du méedicament et des produits de santé) announced in a letter to manufacturers, a ban on several types of textured breast implants including Allergan's Natrelle style 410.     Available at https://ansm.sante.fr/S-informer/Actualite/L-ANSM-

decide-par-mesure-de-precaution-de-retirer-du-marche-des-implants-mammaires-macrotextures-et-des-implants-mammaires-a-surface-recouverte-de-polyurethane-L-ANSM-ne-recommande-pas-d-explantation-preventive-pour-les-femmes-porteuses-de-ces-implants-Communique.

95.     Prior to the ban, the ANSM recommended that instead of textured implants, health professionals "rather use implants with a smooth surface.'" Available at https://www.msn.com/en-ph/health/medical/france-to-review-safety-of-lymphoma-linked-breast-implants/ar-BBPXEMj.

96.     After France's decision to ban textured implants, Canada and the Netherlands also suspended the sale of textured implants.

97.     In response to the ANSM's decision, the FDA stated, "the FDA is aware of the recent decision by the French Notified Body to not renew the CE mark for Allergan textured breast implants" and "we have been in contact with French regulatory authorities to discuss the issue." Available at https://www.nbcnews.com/health/womens-health/allergan-s-textured-breast-implants-recalled-french-authorities-n949656.

## FACTS SPECIFIC TO CAROL BURNSIDE

98.     In 2004, Plaintiff Carol Burnside was diagnosed with precancerous lesions of the breast and underwent a double mastectomy.

99.     In 2005, she had reconstructive surgery with breast implants.

100.    On March 9, 2006, after what seemed like a rupture in one of the implants, Mrs. Burnside had her first set of implants replaced with McGhan style 410 implants.

101.    For several years, Mrs. Burnside had swelling and pain in her left breast but put off seeking medical attention for financial reasons.

102.    In March 2017, her insurance finally approved coverage for an explant surgery.

103.    On April 11, 2017, Mrs. Burnside underwent bilateral explant surgery and capsulectomy. At the same time, tissue expanders were placed for future revision surgery.

104.    On April 17, 2017, Mrs. Burnside was informed that her capsule was positive for BIA-ALCL.

105.    At the time the McGhan Breast Implants were placed into Carol Burnside's body, she was not advised, nor did she have any independent knowledge, that the McGhan Breast Implants were anything other than safe, life-long products. Nor was she advised that the product was associated and/or known to cause BIA-ALCL.

106.    Carol Burnside was not advised, and had no independent knowledge that:

a.      A significant risk of ALCL existed; or

b.      A significant risk of BIA-ALCL existed; or

c.      She might need future surgery to remove the implants in the future based upon contracting ALCL and/or BIA-ALCL; or

d.      She might need future surgery and/or chemotherapy and radiation, or

e.      She might need future imaging and/or diagnostic procedures to check for, or evaluate ALCL and/or BIA-ALCL; or

f.      The chemicals with which Defendants fill the McGhan Breast Implants contain compounds and metals which are toxic to the human body; or

g.    Smooth implants were a safer available alternative to textured implants.

107.   Mrs. Burnside suffered debilitating side effects from BIA-ALCL and the explant surgery including pain, fatigue, swelling, soreness, post-surgical drains, significant medical expenses, and physical deformity.

108.   At the time the McGhan Breast Implants were placed into Mrs. Burnside's body, she was not advised, nor did she have any independent knowledge, that the implants were anything other than safe, life-long products. Nor was she advised that the product was associated and/or known to cause BIA-ALCL and that she would require future surgery and treatments.

109.   Had Mrs. Burnside been advised that implantation was associated with even the slightest risk of developing ALCL and/or BIA-ALCL she would not have proceeded with implantation of the McGhan Breast Implants.

110.   Had the medical community been made aware of the existence of the true frequency, severity and significance of BIA-ALCL caused by McGhan Breast Implants, medical professionals and providers, including those who advised and served Plaintiff, would not have advised patients, including Plaintiff, to proceed with implantation of the McGhan Breast Implants.

111.   Due to the Defendants' failures to comply with their post-approval surveillance obligations, Carol Burnside did not suspect, nor did she have reason to suspect, that her injuries were caused by the McGhan Breast Implants, or by Defendants' tortious conduct.

112.    Defendants, through their misrepresentations and omissions including their refusal or reckless failures to disclose or report defects and significant events as required by federal law, and by state law which does not impose duties or requirements materially different from those imposed by federal law, concealed from Plaintiff and her healthcare providers the true and significant risks associated with Products.

113.    All conditions precedent to filing this action have occurred, or have been satisfied or waived.

### EQUITABLE TOLLING OF APPLICABLE STATUTE OF LIMITATIONS

110.    Plaintiffs hereby incorporate by reference all other paragraphs in this Complaint as if set forth fully herein.

111.    The running of any statute of limitations has been equitably tolled by reason of Defendants' fraudulent concealment and/or omissions and conduct. Through their affirmative misrepresentations and omissions, Defendants actively concealed from Plaintiff and other consumers the true risks associated with the McGhan Breast Implants.

112.    As a result of Defendants' actions, Plaintiff was unaware, and could not reasonably know or have learned through reasonable diligence, that she had been exposed to the risks alleged herein and that those risks were the direct and proximate result of Defendants' acts and omissions.

113.    Furthermore, Defendants are estopped from relying on any statute of limitations because of their concealment of the truth regarding the safety of the McGhan Breast Implants.

114.    Defendants were under a duty to disclose the true character, quality and nature of the McGhan Breast Implants because this was non-public information over

which they continue to have exclusive control. Defendants knew that this information was not available to Plaintiff, her medical providers and/or her health facilities, yet they failed to disclose the information to the public.

115.   Defendants had the ability to and did spend enormous amounts of money in furtherance of their purposes of marketing and promoting a profitable product, notwithstanding the known or reasonably knowable risks.

116.   Plaintiff, consumers, and medical professionals could not have afforded to and could not have possibly conducted studies to determine the nature, extent and identity of related health risks, and they were forced to rely on Defendants' representations.

## **PUNITIVE DAMAGES**

117.   Defendants' manufacture, marketing, promotion, distribution and sale of a defective product and their failure to provide adequate warnings and instructions concerning its hazards was willful, wanton, reckless and without regard for the public's safety and welfare.

118.   Defendants   knowingly   withheld   information,   and   affirmatively misrepresented information, required to be submitted by federal law, to Plaintiff, the medical community and the public at large, of the safety of McGhan Breast Implants.

119.   Defendants downplayed, understated and/or disregarded their knowledge of the serious and permanent side effects and risks associated with the use of McGhan Breast Implants.   despite available information demonstrating that McGhan Breast Implants were likely to cause serious and potentially fatal side effects to users.

120.   At all times relevant hereto, Defendants knew of the defective nature of their McGhan Breast Implants, and continued to design, manufacture, market, label, and sell McGhan Breast Implants so as to maximize sales and profits at the expense of public health and safety, with wanton and willful disregard of the safety of product users, consumers, or others who foreseeably might be harmed by McGhan Breast Implants, including Plaintiff who did suffer such harm.

121.   Defendants misled regulators, the medical community and the public at large, including Plaintiff, by making false and misleading representations about the safety of McGhan Breast Implants.   Defendants knowingly withheld or misrepresented information required to be submitted to the FDA under the agency's regulations, which information was material and relevant to the harm suffered by Plaintiff.

122.   As a direct and proximate result of Defendants' reckless, willful and wanton acts in disregard of the safety of the public generally and of Plaintiff in particular, Plaintiff suffered profound injuries which are permanent and continuing in nature, required and will require medical treatment and hospitalization, have become and will become liable for medical and hospital expenses, lost and will lose financial gains, have been and will be kept from ordinary activities and duties and have and will continue to experience mental and physical pain and suffering, disability and loss of enjoyment of life, all of which damages will continue in the future.

## **CAUSES OF ACTION**

### **COUNT 1 - NEGLIGENCE AND NEGLIGENCE *PER SE***
**(Against All Defendants)**

123.   Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

124.   At all material times, Defendants owed Plaintiff Carol Burnside a duty to use reasonable care, pursuant to the federal post-approval requirements, to discover dangerous qualities and characteristics present on the McGhan Breast Implants as a result of manufacturing flaws and a deficiency in quality control.

125.   Defendants owed Plaintiff a duty to use reasonable care in the production (manufacture) and sale (marketing) of McGhan Breast Implants.

126.   Defendants owed Plaintiff a duty to use reasonable care in conducting and reporting on post-approval studies, monitoring, testing, and adequately warning of the dangers, including the development of BIA-ALCL, related to McGhan Breast Implants.

127.   Defendants formulated, designed, made, created, labeled, packaged, tested, constructed, assembled, advertised, manufactured, sold, distributed, marketed, and promoted McGhan Breast Implants, including the devices which were implanted into Plaintiff Carol Burnside.

128.   Plaintiff was implanted with McGhan Breast Implants which were defective, dangerous and adulterated upon manufacture, and without adequate warnings, in violation of state law, which does not impose duties or requirements materially different from those imposed by federal law including the PMA post approval specifications and regulatory requirements, resulting in product failure and serious injury to Plaintiff.

129.   Defendants had a duty under 21 C.F.R. § 820.70(e) to establish and maintain procedures to prevent contamination of equipment or product by substances that could reasonable be anticipated to have an adverse effect on product quality.

130.   Defendants violated the duties owed to Plaintiff by:

a.      failing to establish and maintain procedures to prevent the contamination of McGhan Breast Implants by substances that could cause an adverse effect on purchasers, including Plaintiff;

b.      failing to use exercise ordinary care in the manufacturing and marketing of McGhan Breast Implants when they contained contaminants and/or bacteria in violation of the FDA requirements and standards as set forth in the Facts section of this Complaint;

c.      placing breast implants into the stream of commerce that were not sterile;

d.      failing to warn Plaintiff's physician and Plaintiff of the risk that the breast implants were contaminated and could result in serious bodily injury.

131.   Defendants had parallel duties under state and federal law to exercise reasonable care in establishing and maintaining procedures to prevent the contamination of their products that could be dangerous and have adverse effects on consumers.

132.   Defendants violated the parallel Colorado state duty of a manufacturer not to distribute a product in a defective and unreasonably dangerous condition.

133.   Defendants have based their state law negligence claim on violations of federal law.

134.   Defendants breached their parallel duties by failing to establish and maintain procedures to prevent contamination of their breast implants.

135.   Defendants' violations caused the McGhan Breast Implants to be sold to Plaintiff Carol Burnside in a contaminated and dangerous condition which caused her to develop and suffer from BIA-ALCL.

136.   Additionally, Defendants had a parallel duty to adequately warn Plaintiff, pursuant to federal and state requirements, of any dangerous condition of its products and failed to do so.

137.   Defendants violated the parallel state and federal duty to warn by failing to adequately warn Plaintiff Carol Burnside and her physicians, either directly or by not timely and accurately reporting to regulatory authorities the risks of serious defects, adulterations and life-altering complications, including the development of BIA-ALCL, experienced by patients in whom the products were previously implanted.

138.   Defendants' specific actions which constitute breaches of these duties to Plaintiff include: failing to timely and accurately report adverse events regarding the McGhan Breast Implants; failing to report the McGhan Breast Implants' failure to meet performance specifications and expectations under the PMA and FDA requirements; failing to revise and update product labeling to reflect Defendants' current knowledge of BIA-ALCL; receiving but failing to warn or report to the FDA and the medical community Defendants' knowledge and information regarding complaints and specific events about McGhan Breast Implants causing BIA-ALCL, and additional injuries including:

a.     Adverse events requiring removal;

b.     Persistent and/or chronic inflammation or autoimmune impacts;

c.     suspected cancer linked to breast implants;

d.     ALCL diagnoses linked to breast implants; and,

31

e.    BIA-ALCL diagnoses linked to breast implants.

139.    Defendants disseminated false information by deliberately engaging in false and misleading sales and marketing tactics touting the aesthetic beauty of breast augmentation while minimizing and/or avoiding the risks, which only later, after causing avoidable injury, reached physicians, the medical community, and the public.

140.    At all material times, Defendants knew and intended that the medical community and/or patients would rely upon Defendants' disseminated information in deciding whether to purchase and/or implant McGhan Breast Implants.

141.    At all material times, Defendants knew and intended that patients who were implanted with McGhan Breast Implants would, in reliance on false information, be placed in unnecessary, avoidable, and unreasonable danger due to unwarranted exposure to McGhan Breast Implants, causing them to develop cancer requiring future removal surgeries and to suffer debilitating injuries and conditions, and emotional turmoil attenuated thereto.

142.    Plaintiff and/or Plaintiff's physicians reasonably relied on Defendants' negligent misrepresentations and omissions, as Defendants intended, and would not have made the same decision(s) if provided the required information.

143.    As a proximate and foreseeable result of the foregoing misrepresentations by Defendant, Plaintiff has suffered and will continue to suffer from BIA-ALCL and its accompanying symptoms including, but not limited to, severe physical injuries, severe emotional distress, mental anguish, economic loss, and other injuries for which she is entitled to compensatory and other damages in an amount to be proven at trial.

144.    For each of the statutes and regulations cited in this Complaint, Plaintiff Carol Burnside is within the class of persons the statutes and regulations are intended to protect, and Plaintiff's injuries are of the type of harm these statutes and regulations are designed to prevent. Defendants were negligent in their development, promotion, marketing, manufacture, distribution, sale and/or post-market surveillance of McGhan Breast Implants in one or more of the following ways:

a.      Failing to identify the risk of BIA-ALCL in a timely manner;

b.      Failing to warn of the risk of BIA-ALCL;

c.      Designing, manufacturing, distributing and selling McGhan Breast Implants that are dangerous to the consuming public;

d.      Designing, manufacturing, distributing and selling McGhan Breast Implants which differ from the specifications set forth in the PMA, its Supplements, and the Conditions of Approval;

e.      Failing to conduct regular risk analyses of McGhan Breast Implants; and,

f.      Failing to exercise reasonable care in the manufacturing, inspection, testing, and quality control processes.

145.    As a proximate and legal result of Defendants' failure to exercise reasonable care in the warning, design, manufacture, distribution and sale of the McGhan Breast Implants implanted into Plaintiff, Plaintiff has suffered and will continue to suffer severe from BIA-ALCL and its accompanying symptoms including physical injuries, pain and suffering, severe emotional distress, mental anguish, economic loss, future medical

care and treatment, and other damages for which she is entitled to compensatory and other damages in an amount to be proven at trial.

**WHEREFORE**, Plaintiff Carol Burnside demands judgment against each Defendant individually, jointly and/or severally for all such compensatory, statutory and punitive damages available under applicable law, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper and appropriate.

## COUNT 2 –FAILURE TO WARN
### (Against All Defendants)

146.    Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

147.    At all material times, Defendants were engaged in the business of formulating, designing, making, creating, labeling, packaging, testing, constructing, assembling, advertising, manufacturing, selling, distributing, marketing, and promoting McGhan Breast Implants, including those which were implanted into Plaintiff Carol Burnside.

148.    Defendants had a duty to warn Plaintiff and the FDA, under both federal and state law, of the risks and adverse events associated with the use of McGhan Breast Implants.

149.    In Colorado, a manufacturer also owes a duty to warn a user of a product, even through disclosure to regulatory bodies. This duty includes warnings and reports to the FDA. This duty runs parallel to the Federal requirements of 21 C.F.R. §§ 814, 803.50, 814.82(a)(9), 814.39(a)(2).

150. McGhan Breast Implants were unaccompanied by appropriate warnings regarding the risks associated with its use, including the development of BIA-ALCL.

151. McGhan Breast Implants were defective were defective and unreasonably dangerous when they left the possession of Defendants in that they contained insufficient warnings to alert Plaintiff of the dangerous risk of BIA-ALCL associated with their use.

152. At all material times, Defendants knew of the risk of BIA-ALCL associated with their implants and failed to provide warnings to Plaintiff, or report adverse events to the FDA, which accurately reflect the risk, signs, symptoms, scope, or severity of this dangerous disease.

153. Plaintiff was implanted with McGhan Breast Implants as Defendants intended and as in a reasonably foreseeable manner.

154. Plaintiff could not have discovered any defect in the McGhan Breast Implants through the exercise of reasonable care.

155. Defendants breached their duty to report known dangers to the FDA and breached their duty to warn Plaintiff.

156. Had Plaintiff Burnside been warned of the risk of BIA-ALCL, she would have relied on that warning and would not have had McGhan Breast Implants implanted in her body.

157. Despite the fact that Defendants knew or should have known that implantation of McGhan Breast Implants was unreasonably dangerous and was likely to seriously jeopardize the health of consuming patients, Defendants failed to report adverse events to the FDA and failed warn Plaintiff of the risk of BIA-ALCL associated with the Product.

158.     The lack of reporting and warnings of the risk of BIA-ALCL was a substantial

contributing factor in bringing about the injuries to Plaintiff.  Had Plaintiff known of the risk

of BIA-ALCL, she would not have had McGhan Breast Implants placed in her body and

would not have developed BIA-ALCL.

159.     As a proximate result and/or substantial factor of McGhan Breast Implants'

defective and adulterated condition at the time they were sold, Plaintiff suffered and will

continue to suffer severe physical injuries, pain and suffering, emotional distress, mental

anguish, economic loss, future medical care and treatment, and other damages for which

she is entitled to compensatory and other damages in an amount to be proven at trial.

**WHEREFORE**,  Plaintiff  Carol  Burnside  demands  judgment  against  each

Defendant individually, jointly and/or severally for all such compensatory, statutory and

punitive damages available under applicable law, together with interest, costs of suit,

attorneys' fees and all such other relief as the Court deems proper and appropriate.

## COUNT 3 – STRICT PRODUCTS LIABILITY
### (Against All Defendants)

160.     Plaintiff re-alleges and incorporates by reference the allegations contained

in the preceding paragraphs of this Complaint.

161.     At  all  material  times,  Defendants  were  engaged  in  the  business  of

formulating,  designing,  making,  creating,  labeling,  packaging,  testing,  constructing,

assembling, advertising, manufacturing, selling, distributing, marketing, and promoting

McGhan Breast Implants.

162.     Defendants  formulated,  designed,  made,  created,  labeled,  packaged,

tested, constructed, assembled, advertised, manufactured, sold, distributed, marketed,

and promoted McGhan Breast Implants, including those which were implanted into Plaintiff Carol Burnside.

163.    Plaintiff was implanted with McGhan Breast Implants which were defective, dangerous and adulterated upon manufacture, and which were manufactured with nonconforming materials and uncertified components, or with appropriate components in inappropriate quantities, in violation of the PMA specifications and regulatory requirements, resulting in product failure and serious injury to Plaintiff.

164.    At all material times, Defendants intended for the McGhan Breast Implants to be surgically implanted into the bodies of members of the general public, including Plaintiff, and knew the product would be surgically implanted into members of the general public, including Plaintiff.

165.    Defendants failed to warn Plaintiff and her physicians of the risk of serious defects, adulterations and life-altering complications such as the development of BIA-ALCL described in this Complaint, rendering the device defective and unreasonably dangerous.

166.    Defendants also failed to revise the Product's labeling to give warnings consistent with adverse event information which was known or available to Defendants at the time of distribution, and failed to warn Plaintiff of information which became known or available to Defendants after implantation into Plaintiff.

167.    Plaintiff's McGhan Breast Implants were defective and adulterated at the time of sale and distribution, and at the time they left Defendants' possession, and Defendants failed to adequately warn of the risks that the product was vulnerable to

degradation, deterioration, ruptures, and leakage, and that the product was susceptible to causing BIA-ALCL as suffered by Plaintiff Carol Burnside.

168.   Defendants knew or should have known that there was a significant risk that its McGhan Breast Implants caused, and did in fact increase the risk of contracting, BIA-ALCL. Defendants deliberately refused to disclose this information to FDA, the medical community and the public.

169.   Despite the fact that Defendants knew or should have known that implantation of McGhan Breast Implants was unreasonably dangerous and was associated with an increased risk of serious injury to consuming patients, Defendants failed to monitor and warn of the defects, adulterations, health hazards and increased risks associated with the product.

170.   The defects, adulterations and increased risks inherent in McGhan Breast Implants were not readily recognizable to the ordinary consumer, including Plaintiff and/or Plaintiff's physician. Neither Plaintiff nor her medical providers could, in the exercise of reasonable care, have discovered the defects.

171.   Plaintiff's physician reasonably relied upon the skill, superior knowledge, and judgment of Defendants when she consented to the implantation of McGhan Breast Implants.

172.   At all relevant times, Plaintiff's McGhan Breast Implants were used and implanted as intended by Defendants and in a manner reasonably foreseeable to Defendants.

173.   The McGhan Breast Implants manufactured, designed, promoted, marketed, distributed, and sold by Defendant were expected to, and did, reach Plaintiff

and/or Plaintiff's physician without substantial change in the condition in which they were sold.

174.    Defendants knew that McGhan Breast Implants would be used by the ordinary purchaser or user without inspection for defects and adulterations, and without knowledge of the hazards involved in such use.

175.    McGhan Breast Implants, which were defectively manufactured, distributed, tested, sold, marketed, promoted, advertised, and represented by Defendants, were a substantial contributing factor in bringing about Plaintiff's injuries, which would not have occurred but for the use of McGhan Breast Implants.

176.    The defective and adulterated product was a substantial contributing factor in bringing about or did in fact cause the injuries to Plaintiff that would not have occurred but for the use of McGhan Breast Implants.

177.    The defective warnings were a substantial contributing factor in bringing about the injuries to Plaintiff that would not have occurred but for the use of McGhan Breast Implants.

178.    As a proximate result and/or substantial factor of McGhan Breast Implants defective and adulterated condition at the time they were sold, Plaintiff suffered and will continue to suffer severe physical injuries, pain and suffering, emotional distress, mental anguish, economic loss, future medical care and treatment, and other damages for which she is entitled to compensatory and other damages in an amount to be proven at trial.

**WHEREFORE**, Plaintiff Carol Burnside demands judgment against each Defendant individually, jointly and/or severally for all such compensatory, statutory and

punitive damages available under applicable law, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper and appropriate.

## COUNT 4 - FRAUDULENT MISREPRESENTATION
### (Against All Defendants)

179.    Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

180.    Defendants, having undertaken the manufacturing, marketing, prescription, dispensing, distribution and promotion of McGhan Breast Implants described herein, owed a duty to provide accurate and complete information regarding their product.

181.    Defendants' fraudulently misrepresented information regarding their product including, but not limited to, its propensity to cause serious physical harm.

182.    At the time of Defendants' fraudulent misrepresentations and omissions, Plaintiff was unaware and ignorant of the falsity of the statements and reasonably believed them to be true.

183.    Defendants breached their duties to Plaintiff by providing false, incomplete and misleading information regarding their product.

184.    Defendants acted with deliberate intent to deceive and mislead Plaintiff.

185.    Plaintiff reasonably relied upon Defendants' deceptive, inaccurate and fraudulent misrepresentations.

186.    As a direct and proximate result of one or more of these wrongful acts or omissions of Defendants, or some or any one of them, Plaintiff suffered profound injuries which are permanent and continuing in nature, required and will require medical treatment and hospitalization, have become and will become liable for medical and hospital

expenses, lost and will lose financial gains, have been and will be kept from ordinary activities and duties and have and will continue to experience mental and physical pain and suffering, disability and loss of enjoyment of life, all of which damages will continue in the future.

**WHEREFORE**, Plaintiff Carol Burnside demands judgment against each defendant individually, jointly and/or severally for all such compensatory, statutory and punitive damages available under applicable law, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

<u>**COUNT 5 – FRAUDULENT CONCEALMENT**</u>
**(Against All Defendants)**

187.    Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

188.    Prior to Plaintiff's use of the McGhan Breast Implants and during the period in which Plaintiff actually used the McGhan Breast Implants, Defendants fraudulently suppressed material information regarding the safety and efficacy of the McGhan Breast Implants and the availability of an alternative feasible safer design.   Furthermore, Defendants fraudulently concealed the safety information about the use of McGhan Breast Implants from Plaintiff's physician and Plaintiff Carol Burnside.

189.    Defendants intentionally concealed safety issues with the McGhan Breast Implants in order to induce plastic surgeons, including Plaintiff's physician, to recommend and utilize McGhan Breast Implants for their patients.

190.    At the time Defendants concealed the fact that McGhan Breast Implants were not safe as designed and marketed, Defendants were under a duty to communicate

this information to Plaintiff's physician and Plaintiff Carol Burnside so that Plaintiff's physician and Plaintiff Carol Burnside could appreciate the risks associated with McGhan Breast Implants and chose a safer option.

191.   Plaintiff's physician and Plaintiff Carol Burnside relied upon the Defendants' false and fraudulent misrepresentations and concealments regarding the safety of McGhan Breast Implants.

192.   As a direct and proximate result of Defendants' malicious and intentional concealment of material and information, Defendants caused or significantly contributed to Plaintiff's injuries.

193.   Defendants furthered this fraudulent concealment through a continued and systematic failure to disclose information Plaintiff's physician and Plaintiff Carol Burnside.

194.   Defendants' acts before, during and/or after the act causing Plaintiff's injuries prevented Plaintiff's physician and Plaintiff Carol Burnside from discovering the injury or cause thereof.

195.   Defendants' conduct, as described in the preceding paragraphs and in the Complaint, amounts to conduct purposely committed, which Defendants knew was dangerous, needless and reckless, without regard to the consequences or the rights and safety of Plaintiff and the public.

196.   As a direct and proximate result of Defendants' fraudulent concealment concerning McGhan Breast Implants, as described herein, Plaintiff's physician recommended the use of McGhan Breast Implants to Plaintiff which ultimately caused her to develop and suffer from BIA-ALCL.

WHEREFORE, Plaintiff Carol Burnside demands judgment against each Defendant individually, jointly and/or severally for all such compensatory, consequential, statutory and punitive damages available under applicable law, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

## COUNT 6 – STRICT LIABILITY IN VIOLATION OF THE COLORADO PRODUCT LIABILITY ACT C.R.S. § 13-21-401, *et seq.*
### (Against All Defendants)

204.    Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

205.    In the alternative, Defendants are liable under the Colorado Product Liability Act, C.R.S. §13-21-401, *et seq.*

206.    Plaintiff brings this state law claim against Defendants for violations of federal regulations, for manufacturing and distributing breast implants that were adulterated as a result of being manufactured in violation of FDA regulations and requirements.

207.    Defendants' McGhan Breast Implants were manufactured with contaminants and/or bacteria that remained on the implants after manufacture such that they were in a defective condition and unreasonably dangerous at the time they left Defendants' control and were implanted into Plaintiff Carol Burnside.

208.    The contaminants and/or bacteria on McGhan Breast Implants were the proximate cause of Plaintiff's development of BIA-ALCL and resulting consequential damages.

209.    At all material times, Defendants knew and intended for the unreasonably dangerous and contaminated McGhan Breast Implants to be surgically implanted into the

bodies of members of the general public, including Plaintiff, and impliedly warranted, and falsely and negligently represented, the products to be of merchantable quality, safe and fit for use. These false representations and implied warranties were in fact false and the product was not safe for said purpose. Defendants concealed, omitted, or minimized the side effects of McGhan Breast Implants, including the risks of developing BIA-ALCL, and negligently misrepresented that the product was safe.

210.    At all material times, Defendants' fraudulently suppressed material information regarding the safety and efficacy of the McGhan Breast Implants and the availability of an alternative feasible safer design. Furthermore, Defendants fraudulently concealed the safety information about the use of McGhan Breast Implants to maintain the sales volume of the McGhan Breast Implants and to induce consumers and healthcare providers to utilize the product.

211.    The McGhan Breast Implants manufactured, designed, promoted, marketed, distributed, and sold by Defendants were expected to, and did, reach Plaintiff and/or Plaintiff's physician without substantial change in the condition in which they were sold.

212.    At all material times, Defendants owed to Plaintiff Carol Burnside a duty to use reasonable care, pursuant to the federal post-approval requirements, in conducting and reporting on post-approval studies, monitoring, testing, and adequately warning of the dangers, including the development of BIA-ALCL, related to Defendants' McGhan Breast Implants.

213.    At all material times, Defendants owed to Plaintiff Carol Burnside and the general public a duty to provide accurate and complete information regarding their

44

product including the fact that the McGhan Breast Implants were not safe as designed and marketed.

214. Plaintiff was implanted with McGhan Breast Implants which were defective, dangerous and adulterated upon manufacture, sale, and distribution, and which were manufactured with nonconforming materials and uncertified components, or with appropriate components in inappropriate quantities, in violation of the PMA specifications and regularly requirements, resulting in product failure and serious injury to Plaintiff.

215. The McGhan Breast Implants were defective, unreasonably dangerous and adulterated, at the time they left Defendants' possession.

216. Defendants impliedly warranted, and negligently and fraudulently misrepresented, the safety of the product and failed to adequately warn of the risks of serious defects, adulterations and life-altering complications such as the development of ALCL and/or BIA-ALCL as suffered by Plaintiff Carol Burnside.

217. Defendants intentionally concealed the safety issues of McGhan Breast Implants, including the risk of developing BIA-ALCL, in order to induce consumers and healthcare providers to use McGhan Breast Implants.

218. The defects, adulterations and increased risks inherent in McGhan Breast Implants were not readily recognizable to the ordinary consumer, including Plaintiff and/or Plaintiff's physician. Neither Plaintiff nor her medical providers could, in the exercise of reasonable care, have discovered the defects.

219. Plaintiff and Plaintiff's physician reasonably relied upon the implied warranties, false and fraudulent misrepresentations and concealments regarding the safety of McGhan Breast Implants when consenting and implanting the implants.

220.    At all relevant times, Plaintiff's McGhan Breast Implants were used and implanted as intended by Defendants and in a manner reasonably foreseeable to Defendants.

221.    Defendants knew or should have known that there was a significant risk that its McGhan Breast Implants caused, and did in fact increase the risk of developing, BIA-ALCL.

222.    Such false, fraudulent and negligent misrepresentations and failure to warn is in violation of state law, which does not impose duties or requirements materially different from those imposed by federal law including the PMA post approval specifications and regulatory requirements, resulting in product failure and serious injury to Plaintiff.

223.    Defendants had parallel duties under state and federal law pursuant to the federal post-approval requirements, to exercise reasonable care in providing adequate warnings about the risks and dangers of McGhan Breast Implants, including the risk of developing BIA-ALCL, which was known or reasonably knowable to Defendants at the time of distribution, and that Defendants had come to know in light of adverse conditions and events experienced by patients in whom the Defendants' products were implanted.

224.    Despite the fact that Defendants knew or should have known that McGhan Breast Implants were defective and that implantation was unreasonably dangerous and associated with an increased risk of serious injury to consuming patients, Defendants failed to identify, monitor and warn of the defects, adulterations, health hazards, and increased risk of developing BIA-ALCL associated with the use of the product and outwardly misrepresented its safety.

225. Defendants breached their duty, pursuant to federal post-approval requirements, by failing to adequately warn Plaintiff Carol Burnside and her physicians, either directly or by not timely and accurately reporting to regulatory authorities, of the risks of serious defects, adulterations and life-altering complications, including the development of BIA-ALCL, experienced by patients in whom the products were previously implanted.

226. Defendants' specific actions which constitute breaches of these duties to Plaintiff include: providing false, incomplete and misleading information regarding their product, concealing safety information, failing to timely and accurately report adverse events regarding the McGhan Breast Implants; failing to report Allergan Breast Implant products' failure to meet performance specifications and expectations under the PMA and FDA requirements; failing to revise and update product labeling to reflect Defendants' current knowledge of BIA-ALCL through adverse event information; receiving but failing to warn Plaintiff of information which became known or available to Defendants after implantation into Plaintiff; failing to report to the FDA and the medical community Defendants' knowledge and information regarding complaints and specific events about McGhan Breast Implants causing BIA-ALCL, and additional injuries including:

     a.     Adverse events requiring removal;

     b.     Persistent and/or chronic inflammation or autoimmune impacts;

     c.     suspected cancer linked to breast implants;

     d.     ALCL diagnoses linked to breast implants; and,

     e.     BIA-ALCL diagnoses linked to breast implants.

227.    Defendants' implied warranties and negligent and fraudulent misrepresentations and concealments in promoting and marketing McGhan Breast Implants created and reinforced a false impression as to the safety of McGhan Breast Implants, thereby placing consumers at risk of serious and potentially lethal effects. Such misrepresentations and concealments were made by Defendants with the intent to induce Plaintiff to use the product, to her detriment.

228.    Defendants acted with deliberate intent to deceive and mislead Plaintiff.

229.    Plaintiff reasonably relied upon Defendants' deceptive, inaccurate and fraudulent misrepresentations and concealments when agreeing to the placement of McGhan Breast Implants.

230.    Plaintiff and/or Plaintiff's physicians reasonably relied on Defendants' negligent and fraudulent misrepresentations and omissions, as Defendants intended and knew they would.  Plaintiff and/or Plaintiff's physicians would not have made the same decision(s) if provided the required and accurate information of the product's risks.

231.    At all material times, Defendants knew and intended that patients who were implanted with McGhan Breast Implants would, in reliance on false and concealed information and inadequate warnings, be placed in unnecessary, avoidable, and unreasonable danger due to unwarranted exposure to McGhan Breast Implants, causing them to develop cancer requiring future removal surgeries and to suffer debilitating injuries and conditions, and emotional turmoil attenuated thereto.

232.    As a proximate and foreseeable result of the foregoing implied warranties, negligent and fraudulent misrepresentations and fraudulent concealments by Defendant, Plaintiff has suffered and will continue to suffer from BIA-ALCL and its accompanying

symptoms including, but not limited to, severe physical injuries, severe emotional distress, mental anguish, economic loss, and other injuries for which she is entitled to compensatory and other damages in an amount to be proven at trial.

233.    For each of the statutes and regulations cited in this Complaint, Plaintiff Carol Burnside is within the class of persons the statutes and regulations are intended to protect, and Plaintiff's injuries are of the type of harm these statutes and regulations are designed to prevent. Defendants were negligent in their development, promotion, marketing, manufacture, distribution, sale and/or post-market surveillance of McGhan Breast Implants in one or more of the following ways:

a.    Failing to identify the risk of BIA-ALCL in a timely manner;

b.    Failing to warn of the risk of BIA-ALCL;

c.    Designing, manufacturing, distributing and selling McGhan Breast Implants that are dangerous to the consuming public;

d.    Designing, manufacturing, distributing and selling McGhan Breast Implants which differ from the specifications set forth in the PMA, its Supplements, and the Conditions of Approval;

e.    Failing to conduct regular risk analyses of McGhan Breast Implants; and,

f.    Failing to exercise reasonable care in the manufacturing, inspection, testing, and quality control processes.

234.    As a proximate result and/or substantial factor of McGhan Breast Implants' defective and adulterated condition at the time they were sold, and Defendants' implied warranties and negligent and fraudulent misrepresentations and concealments,

Defendants' failure to exercise reasonable care in the warning, design, manufacture, distribution and sale of the McGhan Breast Implants implanted into Plaintiff, Plaintiff has suffered and will continue to suffer profound injuries which are permanent and continuing in nature, required and will require medical treatment and hospitalization, have become and will become liable for medical and hospital expenses, have been and will be kept from ordinary activities and duties and have and will continue to experience emotional and physical pain and suffering, disability and loss of enjoyment of life, all of which damages will continue into the future.

235.    McGhan Breast Implants, which were defectively manufactured, distributed, tested, sold, marketed, advertised, and represented by Defendants without adequate warnings of the risks of BIA-ALCL, and with false and implied warranties of the product's safety, were a substantial contributing factor in bringing about the injuries to Plaintiff that would not have occurred but for the use of McGhan Breast Implants and Defendants wrongful acts and omissions.

**WHEREFORE**, Plaintiff Carol Burnside demands judgment against each Defendant individually, jointly and/or severally for all such compensatory, statutory and punitive damages available under applicable law, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper and appropriate.

## COUNT 7 - BREACH OF WARRANTY
### (Against All Defendants)

236.    Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

237.    Defendants in their manufacturing, design, distribution, marketing and promotion of McGhan Breast Implants voluntarily made implied and express warranties that the McGhan Breast Implants were safe and effective for Plaintiff and members of the public generally.

238.    Defendants breached the implied warranty of merchantability as McGhan Breast Implants were unfit for their ordinary purpose and were manufactured in a manner that made them unreasonably dangerous.

239.    Additionally, Defendants breached their express warranties of McGhan Breast Implants by advertising them as safe, effective, fit and proper for their intended use.

240.    Defendants further expressly warranted to Plaintiff and Plaintiff's physicians that their McGhan Breast Implants were safer and more effective than other breast implants, were safe and long-lasting.

241.    The requirements of truthful, accurate, and non-misleading warranties do not impose any different or additional requirements on defendants as required by federal law.

242.    McGhan Breast Implants do not conform to these implied or express warranties and representations because McGhan Breast Implants are not safe or effective for their ordinary purpose, nor are they safer or more effective than other breast implants available, and they may produce serious side effects, including among other things BIA-ALCL.

243.    Plaintiff and Plaintiff's physician relied upon Defendants' voluntary express and implied warranties that the McGhan Breast Implants were safe and effective for use.

244.    Defendants breach of warranties directly caused Plaintiff and Plaintiff's physician to choose McGhan Breast Implants and have them implanted which was the direct and proximate cause of Plaintiff's development of BIA-ALCL and profound injuries resulting therefrom.

245.    Plaintiff's injuries are permanent and continuing in nature, required and will require medical treatment and hospitalization, have become and will become liable for medical and hospital expenses, lost and will lose financial gains, have been and will be kept from ordinary activities and duties and have and will continue to experience mental and physical pain and suffering, disability and loss of enjoyment of life, all of which damages will continue in the future.

**WHEREFORE**, Plaintiff Carol Burnside demands judgment against each Defendant individually, jointly and/or severally for all such compensatory, statutory and punitive damages available under applicable law, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

## COUNT 8 – LOSS OF CONSORTIUM
### (Against All Defendants)

246.    Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

247.    As a result of the injuries and damages caused to Plaintiff Carol Burnside by Defendants' tortious conduct in violation of federal law and the post-approval requirements, Carol Burnside was unable to perform activities she had previously commonly performed for the household, for the family, and for her own support. Consequently, Plaintiff Seth Burnside was required to:

a.      Perform all activities and upkeep around the house;

b.      Support Carol Burnside by performing activities she previously performed for her own needs and maintenance;

c.      Take over many of the activities which Carol Burnside previously commonly performed as a parent to Carol Burnside and Seth Burnside's children.

248.   As a result of Defendants' defective and adulterated McGhan Breast Implants and the development of Carol Burnside's BIA-ALCL, Plaintiff Seth Burnside effectively lost the companionship and accompaniment of his wife.

249.   As a further result of Defendants' defective and adulterated McGhan Breast Implants and the injuries they caused to Carol Burnside and the resulting demands placed upon Seth Burnside has suffered lost wages and income.

250.   As a direct and proximate result of the injuries caused to Plaintiff Carol Burnside by Defendants' tortious conduct, Spouse Plaintiff Seth Burnside suffered and will continue to suffer the loss of his wife's consortium, companionship, society, intimacy, affection, services and support, and suffered and will continue to suffer economic damages, including lost wages and income.

**WHEREFORE**, Plaintiff Seth Burnside demands judgment against each Defendant individually, jointly and/or severally for all such compensatory, statutory and punitive damages available under applicable law, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper and appropriate.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Dated this 10th day of April 2019.

Respectfully submitted,

**JORDAN HERINGTON & ROWLEY**

*s/ Jason W. Jordan*
Jason W. Jordan, #37263
5445 DTC Parkway, Suite 1000
Greenwood Village, CO 80111
Phone: (303) 766-8153
Fax: (303) 766-5568
Email: jason@jordanlaw.com


**ROSS FELLER CASEY, LLP**

/s/ Brian J. McCormick, Jr.
Robert Ross, Esquire
Joel J. Feller, Esquire
Brian J. McCormick, Jr., Esquire
Dena R. Young, Esquire
1650 Market Street, 34th floor
Philadelphia, PA  19103
Tel.: (215) 574-2000
Fax: (215) 574-3080
bmccormick@rossfellercasey.com
dyoung@rossfellercasey.com

*Attorneys for Plaintiff*